**SO ORDERED: February 07, 2006.**

**Anthony J. Metz III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MAXWELL E. BUBLITZ | ) | CASE NO. 05-8168-AJM-7A |
| | ) | |
| Debtor | ) | |

**ORDER ON TRUSTEE'S APPLICATION TO ABANDON COMPENSATION ASSETS**

This matter comes before the Court upon the Trustee's Application to Abandon

Compensation Assets and the objection filed by Conseco, Inc. and Conseco Services,

LLC ("Conseco").  For the reasons below, Conseco's objection is overruled.  The

Trustee's Application is granted but the Court's ruling at this juncture is limited to the

finding that Conseco's claims cannot be paid from the Compensation Assets.

### I.   *Background and Procedural History*

Conseco Capital Management, Inc. ("CCM") wished to retain the employment

services of Max Bublitz (the "Debtor") after its parent, Conseco, Inc., filed its chapter 11

1

bankruptcy case on December 17, 2002.   The Debtor had been employed as president and senior vice president of investments at Conseco, Inc, the parent of CCM.  On June 11, 2003 the Debtor entered into an employment agreement (the "Employment Agreement") with CCM, Conseco, Inc., and Conseco Services, LLC (collectively, "Conseco") wherein the Debtor agree to serve as president and CEO of CCM and devote his full time services to CCM.  Conseco agreed to pay him a salary of $400,000 a year with an immediate cash bonus of $450,000 and the potential to earn a target annual bonus of $450,000.

Paragraph 8 of the Employment Agreement provided that the Debtor

> ..covenants and agrees that he shall not, at any time while he is employed by the Company [CCM] or any time thereafter, directly or indirectly, divulge or disclose for any purpose whatsoever, any confidential information...that has been obtained by or disclosed to him as a result of his employment with the Company and which the Company or any of its affiliates has taken appropriate steps to safeguard, except to the extent that such confidential information (a) becomes a matter of public record.., (b) is required to be disclosed by any law; ...or (c) must be disclosed to enable Executive [Debtor] properly to perform his duties under this Agreement.  Upon the termination of Executive's employment, Executive shall return such information..which he may have in his possession or control.

(the "Confidentiality Covenant").

At the time the Employment Agreement was executed, Conseco, Inc. and Conseco Services, LLC  had claims against the Debtor arising from stock purchase plans and programs ("Conseco's claims").  As a condition to entering into the Employment Agreement, Conseco agreed not to pursue collection of its claims from the compensation it paid to the Debtor.  Section 11(e) of the Employment Agreement provided:

> Unless Executive is terminated by the Company for just cause, compensation payable to Executive or on his behalf pursuant to the terms of this Agreement and property solely acquired with said compensation and proceeds thereof ("Compensation Assets") shall not be subject to any set-off, recoupment nor satisfaction of any judgment the Company, its assigns, or any affiliate obtains with respect to the Obligations ("Judgment").  Furthermore, the signators hereto, their affiliates and assigns agree to forebear from enforcing any rights they may have now or hereafter obtain to collect the Judgment by attachment, garnishment, levy, execution, set off or recoupment against the Compensation Assets.

(the "Carveout Provision").  The parties do not dispute that Conseco terminated the Debtor's employment without just cause on September 11, 2003.  Two weeks later, on September 25, 2003, the parties signed a general release where the parties mutually released all claims against each other  but the respective claims of the parties under the Employment Agreement were not released.

The Debtor filed his voluntary chapter 7 on May 2, 2005 (the "Petition Date").  The Debtor disclosed on his Schedule B that the Compensation Assets consisted of various investment accounts held by The Vanguard Group and valued them at $810,548.54.  The Debtor also qualified the disclosure with a statement that Conseco was not entitled to make a claim against the Compensation Assets.  Other than the secured lender holding a fully secured mortgage on the Debtors' residence, Conseco is the Debtor's only listed creditor, holding a general unsecured claim of $17,789,664.00.

Since shortly after the Petition Date, Elliott Levin, the chapter 7 trustee ("Trustee") has maintained the investment accounts that make up the Compensation Assets but has not been responsible for managing them.  Based on the Employment Agreement, the Carveout Provision and the Release, the Trustee moved to abandon (the "Abandonment Motion") the Compensation Assets on October 18, 2005.   Conseco

3

objected.  Hearing on the matter was held on November 29, 2005 and taken under advisement, and the parties were given up to and including December 31, 2005 to submit briefs.  Both Conseco and the Debtor have submitted briefs.  Since then, the Trustee has moved to amend his Abandonment Motion in that he now seeks to keep the Compensation Assets in the estate to the extent necessary to pay administrative claims but still maintains that the Compensation Assets are not available for payment of the Conseco's claims. [1]

## II.    Discussion

Conseco's objection to the Abandonment Motion is based on its belief that the Employment Agreement is an executory contract.  As Conseco's argument goes, since the Employment Agreement was not assumed within the statutory 60 day period [2] it is deemed rejected.  Because rejection is considered a breach of the agreement, the Debtor "breached" his obligations, and his breach excuses Conseco from further performing its obligations under the agreement.  Conseco further posits that rejection of the Employment Agreement is tantamount to termination, which in turn terminates Conseco's obligations under the Carveout Provision.  Because the Compensation Assets are not otherwise exempt under any other law, the Compensation Assets are property of the estate and are available for payment of Conseco's claims.

---

[1] There are assets other than the Compensation Assets (tax refund, club memberships) from which Conseco's claims can be paid but these assets are of *de minimis* value in comparison to the Compensation Assets.

[2] Unless a chapter 7 trustee assumes or rejects an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, such contract or lease is deemed rejected.  11 U.S.C. §365(d)(1).

4

### A.    Is the Employment Agreement an Executory Contract?

Conseco's entire argument depends on the Employment Agreement being found to be an executory contract.  One would think that an oft-used section such as  §365 would define the term "executory contract".  It doesn't.  The legislative history of §365 suggested that executory contracts are those "on which performance remains due to some extent on both sides" but such a broad definition did not take into account that most agreements have some sort of unperformed obligations on either side.  *In re Streets & Beard Farm,* 882 F.2d 233 (7th Cir. 1989); *In re Gencor*, 298 B.R. 902, 909 (Bankr. M. D. Fla. 2003).  Convinced that Congress did not intend such an expansive definition, many jurisdictions, including courts within the 7th Circuit, have adopted the Countryman definition that an executory contract is one where significant unperformed obligations remain on both sides.  See, V. Countryman, *Executory Contracts in Bankruptcy*; Part I, 57 Minn. L. Rev. 439, 460 (1974) (an executory contract is an agreement "where the obligations of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other").   *Street & Beard Farms*, 882 F.2d at 235; *In re Sparks,* 206 B.R. 481, 487 (Bankr. N. D. Ill. 1997).


### B.    The Unperformed Obligations Remaining on Both Sides as of the Petition Date were Neither Material nor Significant

Countryman's "materiality test" requires "that material future performance obligations remain on both sides of a contract in order for the contract to be executory

5

under §365 of the Code". *In re Bluman*, 125 B.R. 359, 363 (Bankr. E.D.N.Y. 1991); *In re Spectrum Information Technologies, Inc.*, 193 B.R. 400, 404 (Bankr. E.D.N.Y. 1996) ("[t]he widely accepted Countryman definition [is] that an executory contract is one under which substantial performance remains on *both* sides"). Under this test, the pertinent terms applicable to obligations still owed by both parties to the contract are "material" and "future". The debtor must have a duty to perform in the future something more than just a passive obligation; at the very least, the debtor must still be required under the agreement to do some affirmative act in the future. *In re Gouveia*, 37 F.3d 295, 299 (7th Cir. 1994). The "materiality" of the future performance is measured as of the petition date. *Spectrum Information Technologies*, 193 B.R. at 404.

Agreements containing restrictive covenants (agreements "not" to do something, e.g. covenants not to compete, covenants not to sue, covenants not to disparage, covenants not to disclose confidential information) pose unique issues as the restrictive covenants typically are only ancillary to the purpose of the contract. See, *In re Spectrum Information Technologies, Inc.,* 190 B.R. 741, 750 (Bankr. E.D.N.Y. 1996). A covenant not to compete prevents the seller of assets from starting a similar business that competes with the buyer; a covenant not to disclose confidential information (such as the Confidentiality Covenant here) prevents employees from giving valuable information to competitors. While the parties may have obligations to perform in the future under these restrictive covenants, the *main* purpose of the contracts in which these covenants appear is the sale of the assets or employment of the employee, not the seller's duty to refrain from competing or the employee's duty to refrain from

disclosing information. [3] Because of their ancillary nature, parties may provide in the contract that breaches of these restrictive covenants may be remedied by a right to seek damages or injunctive relief, but *not* the termination of the entire contract. See, *Bluman*, 125 B.R. at 362. Where these ancillary restrictive covenants are the only obligations left to be performed by at least one party as of the petition date, many courts have concluded that such performance is not "material" enough to make the contract executory. *Sparks*, 206 B.R. at 488 (antenuptial agreement not executory where obligations were fully performed); *Bluman,* (sales agreement not executory where covenant not to compete was only unperformed obligation); *Gencor*, 298 B.R. at 910-912 (even patent licensing agreement *was not* executory where covenant not to sue, in addition to covenants related to "most favored nations" and "patent defense" clauses were unperformed).

That trend does not change where the restrictive covenant is contained in an employment agreement. Such restrictive covenants, too are often ancillary to the main purpose of the contract which is to retain the services of the employee. And, where the employment relationship is terminated *pre petition*, the majority of courts have held that the contract is not executory where the only thing to be performed under the agreement by one party is to honor the restrictive covenants. *Spectrum Information Technologies, Inc.* 190 B.R. 741 (Bankr. S.D.N.Y. 1996) (employment agreement and separation

---

[3] Compare licensing agreements where the duty not to do something is not merely ancillary, but material to the underlying agreement. See, *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 43 (Bankr. D. Del. 1999) ("each party had at least one material duty to perform under the License Agreement: to refrain from suing the other for infringement of any of the patents covered by the license. This performance is material since the licensor's promise to refrain from suing the licensee for infringement is the *raison d'etre* for a patent license".)

agreements not executory where former employees had duty to honor confidentiality, non-interference and non-compete covenants despite the fact that, under separation agreement, former employees had *de minimis* consulting obligations and were entitled to deferred compensation not yet paid); *In re Drake,* 136 B.R. 325 (Bankr. D. Mass. 1992) (employment agreement not executory where former employee whose stock had been repurchased by corporation for $375,000 over 60 months had duty to honor covenant not to compete, despite the fact that the corporation had made no installment payments to the debtor); *In re Hawes*, 73 B.R. 584 (Bankr. W.D. Wis. 1987); (employment agreement not executory where former employee had duty to honor covenant not to compete - former employer granted relief from stay to pursue injunctive relief in state court for alleged violation of covenant); *In re Hughes*, 166 B.R. 103 (Bankr. S. D. Ohio 1994) (employment agreement not executory where former employee's only obligation left to be performed was compliance with confidentiality and non compete covenants).  At least one court has held that an employment agreement is not executory even where the employment relationship had *not* been terminated as of the petition date.  *Spectrum Information Technologies,* 193 B.R. at 404 (employment agreement not executory where employee terminated without cause two months after filing had duty to honor "non interference with a contractual relationship" clause for two years after his termination).  Even those cases that find an employment agreement to be executory are consistent with the Countryman "materiality" test; they involve either the existence of the employment relationship as of the petition date, a duty to perform in the future more than just passive obligations, or both.  *In re Bryant Universal Roofing,*

*Inc.*, 218 B.R. 948 (Bankr. D. Ariz. 1998) (employment agreement executory where employee resigned two months after bankruptcy filed, where settlement agreement did not terminate employee's relationship with employer, and where board retained substantial control over the employee, in that employee had to obtain employer's permission to take outside consulting jobs, and board had ability at any time to require employee to perform various obligations); *In re Constant Care Community Health Center, Inc.*, 99 B.R. 697 (Bankr. D. Md. 1989)(employment agreement executory where former employee terminated without cause had right to deferred compensation but also had duty to honor covenant not to compete; contract provided that in the event of the breach of the covenant, employer's sole remedy was to terminate payment of deferred compensation and employer waived all other remedies; contract was drafted such that violation of non compete covenant was material breach).

The Debtor's employment was terminated without cause in September, 2003, almost two years before the Petition Date. As of the Petition Date, the Debtor's only obligation that remained to be performed under the Employment Agreement was to honor the Confidentiality Covenant and to not disclose confidential information about Conseco. He was under no obligation to provide further employment or consulting services and was not at the whim of a board who could require him to further assist Conseco in its reorganization proceeding. Conseco's only obligation that remained to be performed was to forebear from pursuing the Compensation Assets to collect its claims. It was under no obligation to provide further compensation, not even deferred compensation, to the Debtor. The remaining obligations on both sides are passive and ancillary to the real purpose of the Employment Agreement which was to retain, after

9

Conseco found itself in bankruptcy, the services of the Debtor who had an employment history and familiarity with Conseco's operations.  Though it may be true that the Carveout Provision likely was inducement for the Debtor to enter into the Employment Agreement, the operative point in time here is the Debtor's Petition Date.  Inducement to enter into a contract that, as of the petition date, leaves no material obligations left to be performed by either party, does not make the contract executory.   The restrictive covenants left to be performed by both the Debtor and Conseco "are vestiges of [ the employment agreement] and do not rise to the level of material future performance" *Spectrum Information Technologies,* 190 B.R. at 748.  When the parties entered into the Employment Agreement, the Debtor agreed to waive his right to disclose confidential information and Conseco agreed to waive its right to pursue the Compensation Assets to collect its claims.  The confidentiality and carve out agreements made at the time the agreement was executed are no longer executory.  Neither the Debtor nor Conseco had significant unperformed obligations as of the Petition Date.  Whatever was left to be performed by the parties was not material to the Employment Agreement and therefore that agreement is not an executory contract.  [4]

### C.  *Even if the Employment Agreement were Executory, the "Breach" Resulting from "Rejection" Does Not Terminate the Agreement*

The "Alice in Wonderland" quality to the case here is that the Debtor has not disclosed confidential information and has not breached the Confidentiality Covenant.

---

[4] If the agreement here were truly executory, when would the contract end?  As long the Debtor refrained from disclosing confidential information and as long as Conseco refrained from pursuing the Compensation Assets, the contract presumably would remain executory , which certainly appears inconsistent with a employment agreement where the employment has been terminated.

Nevertheless, Conseco claims it is no longer bound by the Carveout Provision by utilizing the tortured argument that (1) the agreement is an rejected executory contract (2) that puts the Debtor in a *technical* 'breach" of the agreement (3) which in turn excuses Conseco's performance under the agreement.  Assuming *arguendo* that the Employment Agreement was executory as of the Petition Date, the Debtor's "breach" of the Confidentiality Covenant resulting from rejection does not *terminate* the agreement or Conseco's obligations under it.  Section 365(g)(1) merely provides that rejection of an executory contract constitutes a prepetition breach.  See also, *In re Hughes*, 166 B.R. at 105 ("....rejection of a contract does not rescind a contract or the obligations found therein"); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 709 (Bankr. S.D.N.Y. 1992 ("..rejection constitutes nothing more than a prepetition breach of the contract...rejection of a contract does not terminate such rights that arise from rejected contracts"); *In re Park*, 275 B.R. 253, 256 (Bankr. E. D. Va. 2002) ("The general rule is that rejection constitutes a *breach* of the lease or executory contract but does not *terminate* the contract"); *A & L Labs, Inc. v. Bou-Matic LLC,* 429 F.3d 775 (8th Cir. 2005) ("Section 365(g)'s main purpose is to determine claim priorities, not to determine the contracting parties' contractual rights").  Thus, rejection would not have released Conseco from its obligations under the Carveout Provision even had the Employment Agreement been executory.

Even under the plain terms of the Employment Agreement, a breach of the Confidentiality Covenant did not terminate the agreement or did not relieve Conseco of its obligations under the Carveout Provision.  Paragraph 14(b) provides:

> Executive acknowledges that a breach or threatened breach by Executive of Section 8 [Confidentiality Covenant}....will give rise to irreparable injury to the Company and that money damages will not be adequate relief for such injury. ...[t]he Company and Executive agree that the Company may seek and obtain injunctive relief, including without limitation, temporary restraining orders, preliminary injunctions and /or permanent injunctions.... Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to the Company for such breach...including the recovery of damages from Executive.

Thus, Conseco would still be bound by the Carveout Provision even if the Employment Agreement were executory. [5]

### D.  The Release Executed by the Parties Does Not Relieve Conseco of Its Obligations Under the Carveout Provision

Conseco uses equally tortured logic to argue why it is not bound by the release executed by the parties two weeks after the Debtor's employment was terminated without just cause.  The parties executed a general release on September 25, 2003 wherein each released the other of all claims.  *Excepted* from the release, however (a "carveout" to the release, if you will) were both the Debtor's and Conseco's rights under the Employment Agreement .  Thus, the Debtor's claims against Conseco arising from his right to enforce the Carveout Provision were left intact, as were Conseco's claims against the Debtor arising from its right to enforce the Confidentiality Covenant. However, under Paragraph 2 of the release, Conseco could be released of its obligations under the Employment Agreement (the Carveout Provision) if, as a result of a "challenge" brought by the Debtor, the Debtor's release of claims against Conseco

---

[5] Conseco's equitable right to seek injunctive relief for breach of the Confidentiality Covenant is not a "claim" and therefore it cannot be discharged in the Debtor's bankruptcy.  See, *Matter of Udell*, 18 F.3d 403 (7th Cir. 1994).

was determined to unenforceable.  In such case, Conseco's obligation to "make any additional payments or to provide any additional benefits under the Employment Agreement shall immediately cease to be of any force and effect".    Again, Conseco contends that the rejection of the executory Employment Agreement and the resulting breach has the result of rendering the Debtor's release of claims against Conseco unenforceable.  As stated earlier, the Employment Agreement is not executory, and even if it were, the effect of rejection would not be a termination of either the Employment Agreement or the Release. [6]

For the following reasons, Conseco's objection to the Trustee's Abandonment Motion is OVERRULED.  The Abandonment Motion is granted only to the extent that Conseco's claims cannot be paid from the Compensation Assets.  The issue of whether the Compensation Assets should remain in the estate to the extent needed to pay administrative claims will be addressed by further court order.

# # #

Distribution:
Jon Abels, Attorney for the Debtor
Ryan L. Leitch, Attorney for Conseco
Scott McMillan / Anup Sathy / Micah Marcus, Attorneys for Conseco
Elliott Levin, Chapter 7 Trustee
Nancy J. Gargula, United States Trustee

---

[6] The release incorporates the Employment Agreement by reference.  If Section I of the release was determined to be unenforceable, the *Employment Agreement* was modified in that Conseco could pursue the Compensation Assets.  The release was executed two weeks after the Debtor's employment was terminated and was in essence a final "wrap up of the loose ends" that remained between the Debtor and Conseco.  But, there was no real continued "viability" to the Employment Agreement other than to continue to keep the parties bound by the Confidentiality Covenant and the Carveout Provision.  Query whether the Employment Agreement became merged within the release and, under the doctrine of merger, any subsequent action under the Employment Agreement was extinguished.

13

14